IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LINDA MALOBA LUCAS,                          :
                                             :
           Plaintiff,                        : Case No. 2:24-cv-03888
                                             :
     v.                                      : Judge Algenon L. Marbley
                                             :
FIFTH THIRD BANK, NATIONAL                   : Magistrate Judge Chelsey M. Vascura
ASSOCIATION, *et al.*,                       :
                                             :
           Defendants.                       :

## OPINION & ORDER

This matter is before this Court on Defendant Fifth Third Bank, National Association's ("Defendant" or "Fifth Third") Motion for Summary Judgment and Plaintiff Linda Lucas' Motion for Summary Judgment. (ECF Nos. 46, 47). For the reasons below, this Court **GRANTS in part and DENIES** in part Defendant's Motion for Summary Judgment (ECF No. 46) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 47).

### I.      BACKGROUND

### A.  Factual Background

On July 20, 2021, Plaintiff Linda Lucas bought her home at 8686 Bunch Flower Court, Westerville, OH 43082. (ECF Nos. 33 at 4; 47 at 3). Lucas secured a mortgage loan serviced by Defendant Fifth Third on her home in the principal amount of $389,600.00. (ECF Nos. 33 at 4; 46 at 2). Upon origination, the loan was not escrowed for taxes and insurance. (*Id.*). Instead, Lucas assumed responsibility for paying her own taxes and insurance. (*Id.*). The terms of the escrow waiver signed by Lucas provided "[i]f you don't pay these costs, we could require an escrow account on your mortgage or add the costs to your loan payment." (ECF No. 46-6, Exhibit F, at 1). In July 2022, however, Lucas failed to pay her property taxes on time. (ECF No. 33 at 4). When

1

Lucas ultimately sent her property tax payment to the Delaware County Treasurer's Office, she was informed her property taxes had been paid by Fifth Third. (*Id.*).

On August 31, 2022, Fifth Third alleges it notified Lucas via letter that her real estate taxes were overdue, and that if she did not provide proof of payment within 30 days, Fifth Third may pay the delinquent taxes and establish an escrow account for the future payment of all property taxes. (ECF Nos. 46 at 3; 46-7, Exhibit G, at 1). After hearing no response, on November 2, 2022, Fifth Third paid the Delaware County property taxes on Lucas's behalf and established an escrow account for her loan. (ECF No. 46 at 3). In result, Lucas's loan payments increased from $1,776.78 to $4,064.50. (ECF No. 47 at 3). This increase covered the missed property tax payment together with a new assessment of $810.77 per month to build up the escrow account for the following year's property taxes and insurance. (*Id.*).

Lucas alleges that she reached out to Fifth Third to work with them on loss mitigation options to help her handle the new escrow account, and continued to pay her regular, automatic mortgage payments of $1,776.78. (*Id.* at 4). On January 16, 2023, Fifth Third informed Lucas her loan payment was overdue in the amount of $4,153.33, and on February 27, 2023, Fifth Third informed Lucas her account was in default, and she owed $7,547.68 by April 2, 2023, to cure the default. (ECF Nos. 46-10, Exhibit J; 46-11, Exhibit K). Finally, on May 9, 2023, Fifth Third notified Lucas that it was accelerating her loan and her payment was due in full. (ECF No. 46-12, Exhibit L). After receiving no response for months, Fifth Third filed a foreclosure action against Lucas in the Delaware County Court of Common Pleas, Case No. 23 CV E 06 0367. (ECF No. 46 at 4).

Lucas alleges that Fifth Third assured her that since she had begun working with them on the loss mitigation process, she did not need to worry about the foreclosure lawsuit, and as a result

she did not hire an attorney to respond to the litigation. (ECF No. 47 at 4). Ultimately, she did not appear or defend in the case, and a default judgment was entered against her on July 28, 2023. (*Id.*).

On August 18, 2023, Lucas filed her loss mitigation application, which was accepted as complete by Fifth Third on August 29, 2023. (*Id.*). Accordingly, the foreclosure case was placed on hold. (ECF No. 46 at 5). As part of the loss mitigation process, Lucas was offered a loan modification pending completion of a 3-month Trial Period Plan ("TPP"). (ECF Nos. 46 at 5; 47 at 4). Lucas accepted the offer and made the three required TPP payments in November, December, and January 2023. (*Id.*). On January 23, 2024, upon completion of the TPP, Fifth Third informed Lucas via letter that she had until February 7, 2024, to review, notarize, and return the loan modification documents to accept the loan modification. (*Id.*). The letter specifically informed Lucas that the failure to return the completed documents by the outlined date would result in the automatic withdrawal of the loan modification offer. (ECF No. 46-18, Exhibit R). Additionally, the letter provided that her next payment was due on March 1, 2024. (*Id.*).

According to Lucas, on February 6, 2024, she notarized and dropped off her documents for mailing at a UPS store. (ECF No. 47 at 5). Lucas alleges she later learned that the UPS box was vandalized and Fifth Third did not receive the documents. (*Id.*). On February 27, 2024, Fifth Third agreed to send new loan modification documents for Lucas to sign, notarize, and return. (*Id.*). Fifth Third mailed the second set of documents on March 1, 2024, and Lucas received the documents on March 6, 2024. (*Id.* at 5–6). The modification documents mailed were identical to the first set of documents and included the initial due date of February 7, 2024. (*Id.* at 6). Despite such, Lucas returned the executed documents on March 11, 2024. (*Id.*). Unbeknownst to Lucas, Fifth Third closed her loss mitigation file on March 9, 2024, after not having received the completed

modification agreement or her March 1, 2024, loan payment. (ECF No. 46 at 6). Fifth Third contends that it did not receive the completed modification agreement from Lucas until March 13, 2024, four days after it closed the loss mitigation file, and thirty-four days after the initial February 7, 2024, due date. (*Id.*).

On March 14, 2024, Fifth Third moved to appoint a private selling officer in the foreclosure case. (*Id.*). According to Lucas, she was given no opportunity by Fifth Third to make her March loan payment before the resumption of the foreclosure action. (ECF No. 47 at 6). In a conversation with Fifth Third on March 1, 2024, Lucas alleges that Fifth Third informed her it could not accept payment given her loan modification was still being processed, and she was still under foreclosure status, but that she could wait until March 15 to make her payment. (*Id.* at 6–7). Lucas further alleges various conflicting statements from Fifth Third regarding her situation such as Fifth Third informing her on March 19, 2024, that she did not owe anything for the month, and that her next payment would not be due until April 1, 2024. (*Id.*). Lucas alleges that the situation caused her immense emotional distress and ultimately forced her to hire legal counsel on April 1, 2024. (*Id.* at 7–8).

On April 23, 2024, Lucas filed a motion for relief from judgment and a stay in the foreclosure action. (*Id.* at 8). That same day Lucas paid the $8,838 that Fifth Third said was needed to book the modification. (*Id.*). On April 25, 2024, Fifth Third countersigned the loan modification agreement. (ECF No. 46 at 7). Then on May 2, 2024, Fifth Third moved to vacate the judgment and dismiss the foreclosure case. (*Id.*). The next day the court entered an order vacating the judgment and dismissing the foreclosure case citing that Lucas had been approved for a final loan modification. (*Id.*). On May 13, 2024, the loan modification agreement was recorded. Consequently, no foreclosure occurred, and Lucas resides in her home to date. (*Id.* at 8).

## B.  Procedural History

On August 28, 2024, Lucas filed a complaint against Fifth Third alleging violations of the Real Estate Settlement Procedures Act ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA"), and breach of contract. (ECF No. 1). Lucas seeks to recover damages related to Fifth Third's closure of her loss mitigation file and Fifth Third's alleged failure to honor her loan modification. (ECF No. 47 at 9). Lucas amended her Complaint on May 29, 2025. (ECF No. 33). On August 29, 2025, Fifth Third filed a Motion for Summary Judgment asserting that: (1) Lucas's claims are barred by judicial estoppel and waiver doctrines; (2) Lucas's breach of contract claims are meritless; and (3) Lucas's RESPA claims fail given no foreclosure sale occurred, Lucas suffered no actual damages, and Fifth third complied with RESPA and Regulation X. (ECF No. 46). That same day, Lucas filed a Cross Motion for Summary Judgment contending that: (1) Fifth Third violated RESPA and Regulation X by wrongfully moving to sell Lucas's home and failing to provide her adequate time to effectuate the loan modification; and (2) Fifth Third breached the loan modification agreement. (ECF No. 47). These motions are fully briefed and ripe for this Court's review.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).

5

In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also Matsushita Elec. *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad.*, 929 F.2d at 248 (citing *John v. State of La. (Bd. of Tr. for State Colleges & Univ.)*, 757 F.2d 698, 705 (5th Cir. 1985)).

### III.    LAW AND ANALYSIS

#### A.  Judicial Estoppel and Waiver

As a threshold matter this Court must address Fifth Third's arguments that Lucas's claims are barred by judicial estoppel and waiver. Fifth Third's arguments are twofold. First, Fifth Third contends that the order vacating judgment and dismissing the foreclosure case in the Delaware

Court of Common Pleas bars Lucas's claims under the doctrine of judicial estoppel. (ECF No. 46 at 10–12). Second, Fifth Third argues that in entering into the loan modification agreement and reaping its benefits, Lucas has waived all claims asserted here. (*Id.* at 12–13).

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990)). The purpose of the judicial estoppel doctrine is to prevent parties from abusing the judicial process through gamesmanship and playing both sides. *Teledyne*, 911 F.2d at 1218.

Fifth Third contends judicial estoppel applies because Lucas complains about fees, charges, and lost equity in her home, all of which were spelled out in the loan modification agreement into which she willingly entered. (ECF No. 46 at 10). Further, Fifth Third highlights that in the foreclosure action Lucas argued that the loan modification agreement was enforceable and the agreement ultimately prevented the foreclosure case from proceeding. (*Id.* at 11). Fifth Third argues that if Lucas had any issues with improper fees imposed by the agreement, she could have raised them, but failed to do so in the state court action. (*Id.*). Lucas counters that judicial estoppel does not apply because: (1) the judgment was vacated and the case was dismissed before Lucas asserted any claims; and (2) she does not assert damages inconsistent with the state foreclosure action. (ECF No. 49 at 10).

This Court finds that Fifth Third construes Lucas's claims too narrowly. At issue in the lower court proceeding was the potential foreclosure and sale of Lucas's home related to her default on her mortgage loan with Fifth Third. Here, however, Lucas raises RESPA violations, breach of

contract, and FDCPA[1] violations. True, the claims raised in this case derive from the same underlying set of facts at issue in the state court action, but, Lucas's attempt to enforce the loan modification agreement in lower court and prevent the foreclosure of her home is not contrary to any positions asserted here. Here, Lucas seeks to recover for the damages incurred in securing the modification agreement. Nothing in Lucas's Complaint seeks to disturb the terms agreed to in the modification agreement. Even if Lucas's position in this current case was contradictory to her prior position, that alone is not enough. *See Teledyne*, 911 F.2d at 1217 n.3 ("[J]udicial estoppel does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position."). Most notably, the foreclosure judgment in the state court case was vacated; hence, there is no contrary position that the court officially adopted at issue. *Id.* at 1218 (finding no judicial estoppel where the lower court orders did not adopt a position urged by the party as a preliminary matter or as part of a final disposition); *see also Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988) ("When an ordinary civil case is settled, there is no judicial acceptance of anyone's position and thus there can be no judicial estoppel in a later proceeding.") (internal quotation marks and citation omitted).

This Court is also not persuaded by Fifth Third's waiver arguments. The loan modification agreement provides that "[t]here are no defenses or offsets to the Note or Security Instrument." (ECF No. 46-6, Exhibit W, at 2). In signing the agreement, Lucas relinquished any defenses as to the Note. Lucas is not challenging the Note, nor can her claims be classified as defenses or offsets. Rather, she challenges Fifth Third's conduct in the process of obtaining her loan modification and seeks recovery of damages for emotional distress and attorney's fees related to the state court foreclosure action. *See Cooper v. Fay Servicing, LLC*, 115 F. Supp. 3d 900, 908 (S.D. Ohio 2015)

---

[1] Lucas abandons her FDCPA claims in her summary judgment briefing. Thus, this Court finds Lucas conceded this claim and grants Fifth Third summary judgment as to this issue. *See* Section III.C.1, *supra*.

(finding the plaintiff's RESPA claims to not be defenses or offsets and holding waiver inapplicable). Further, Fifth Third cites no case law supporting its contentions that Lucas was obligated to raise issues with the loan modification process in the state court action. This Court does not read any limiting language in the loan modification that prevents such claims. *Cf. Ankerman v. Am. Equity Mortg., Inc.*, 2009 WL 1212820, at *2–3 (W.D. Mich. Apr. 30, 2009) (finding plaintiff waived right to bring RESPA claims where the loan modification agreement contained a release and waiver of claims provision that released any and all claims against the defendant). Thus, Lucas's claims are not barred by judicial estoppel, nor did she waive her right to bring such claims.

### B.  Standing

In order to bring claims in federal court a plaintiff must establish standing by demonstrating: "(1) a concrete, particularized, and actual or imminent injury in fact; (2) that the defendant likely caused the injury; and (3) that judicial relief would likely redress the injury." *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 423 (6th Cir. 2022) (internal quotation marks and citation omitted). In Fifth Third' view, because RESPA only authorizes recovery for actual damages resulting from RESPA violations, Lucas lacks standing, as her damages stem from her own default and failure to make payments under the loan modification agreement, not RESPA violations. (ECF No. 46 at 18).

First, Fifth Third contends that while in some cases attorney's fees can be actual damages, this is not the case here given that the foreclosure resulted from nonpayment of undisputed debts. (*Id.* at 19). Notably, Fifth Third cites various cases finding that attorney's fees in the ***present action*** are not actual damages until after a RESPA violation has been established. (*Id.*) (citing *Houle v. Green Tree Servicing, LLC*, 2015 WL 13021802, at *1 (E.D. Mich. July 1, 2015); *Kantz*

9

*v. Bank of Am., N.A.*, 2018 WL 1948164, *6 (M.D. Tenn. Apr. 25, 2018)). Fifth Third is correct that Lucas is not entitled to damages for attorney's fees related to this current litigation. While Lucas abandons her initial claims for attorney's fees related to this action, Lucas maintains damages from attorney's fees in the state court case, not the present litigation. (ECF No. 47 at 15). Thus, Lucas can establish a concrete and particularized injury based on attorney's fees from the state court action. *See Hurst*, 44 F.4th at 423 ("[Plaintiff] incurred the fees she seeks to recover in a separate proceeding—i.e., the state foreclosure action—and not through the current RESPA litigation. Fees from a separate proceeding, like these, do not raise typical standing concerns because the harm has already materialized, and the plaintiff cannot manufacture standing simply by filing a new lawsuit. … [T]he origin of [Plaintiff's] fees also matters because costs a borrower incurs due to a servicer's RESPA violations are actual damages. … These costs include attorney fees a plaintiff pays to defend herself against a lawsuit resulting from the servicer's noncompliance with RESPA.") (internal citation omitted). Given that all of Lucas's RESPA claims derive from the same series of events with Fifth Third in the state court proceeding, the related fees satisfy standing for all RESPA claims asserted. Despite such, this court will still address whether Lucas can claim actual damages under RESPA for emotional distress.[2]

   The Sixth Circuit has declared that in some cases emotional damages may be sufficient to establish damages under RESPA. *See Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012). In *Houston*, the Sixth Circuit overturned the lower court's grant of summary judgment on RESPA violations where the court failed to address

---

[2] In her Amended Complaint, Lucas also alleged damages for attorney's fees in this litigation, "improper fees assessed on the account, loss of credit, and loss of equity in her home." (ECF No. 33 at 10–11). Lucas has abandoned such claims in her summary judgment briefing; therefore, this Court only addresses damages related to attorney's fees related to the state court action and emotional distress.

plaintiff's assertions that "she suffered 'stress, mental anguish, embarrassment, and humiliation,' because of U.S. Bank's violation, and not merely because of the foreclosure." *Id.* The Sixth Circuit concluded that there was a genuine issue of material fact as to whether plaintiff suffered damages because of the loan servicer's RESPA violations. *Id.* In *McMillen v. Resurgent Cap. Services, L.P.*, a court in this District adopted Sixth Circuit's reasoning in *Houston* to deny summary judgment on RESPA violations related to emotional distress damages. 2015 WL 5308236, at *11 (S.D. Ohio Sept. 11, 2015). In *McMillen*, the plaintiff attested that "[d]ue to the actions of Defendant, my wife and I suffer, and continue to suffer, mental anguish due to my worries and concerns that the errors in my loan as a result of Defendant's actions will result in foreclosure and the loss of my home." *Id.* at *10. Despite the defendant's contention that the alleged emotional distress claim was pled insufficiently and not caused by Defendant's violation of RESPA, the *McMillen* court reasoned that "[v]iewing the facts in the light most favorable to Plaintiffs…Plaintiffs have adduced record evidence supporting their claim of mental anguish that a jury could believe is a result of Defendant's actions sufficient to demonstrate the existence of a genuine issue of material fact on the issue of emotional distress damages." *Id.* at *11 (citing *Houston*, 505 F. App'x at 548).

As support for her emotional distress damages, Lucas attested:

> When Defendant refused to accept the loan modification, it caused me to suffer severe emotional distress, anxiety, stress, embarrassment, and sleepless nights. Defendant's refusal to accept the loan modification and the imminent threat of losing my home left me and my husband on the brink of despair and feeling helpless. This caused an immense strain on our relationship.

> Dealing with Defendant has been a bureaucratic nightmare. I was constantly transferred from customer service department to department, and no one could clearly explain my account or how I could comply with the loan modification. I felt my pleas for help were ignored. Even though Defendant said it would send me new loan modification documents, it denied them before I could return them. I spent an extraordinary amount of time trying to resolve the situation but received conflicting information and no clear path

11

> forward. I felt incredibly betrayed by Defendant's treatment of the modification. I am still concerned about Defendant's accounting. I am at a complete loss as to how a company can treat its clients this way. No one should have to go through something like this.

(ECF No. 47-1 at 6–7). This Court finds the claims asserted by Lucas to be analogous to the claims asserted in *McMillen* and *Houston*. While Fifth Third is correct that fear of foreclosure resulting merely from the plaintiff's own failure cannot support a RESPA claim, this argument misconstrues Lucas's allegations. (ECF No. 46 at 22) (citing *Billings v. Seterus, Inc.,* 170 F. Supp. 3d 1011, 1017 (W.D. Mich. 2016)). Lucas specifically contends that the refusal of Fifth Third to accept the loan modification after granting an extension, the back-and-forth communications, and the inconsistent directives caused her severe stress emotional distress, not merely the foreclosure proceedings themselves. (ECF Nos. 47-1 at 6–7; 49 at 7–8; 51 at 13). She even specified certain symptoms that she faced such as sleepless nights and strain in her marriage. *Cf. Austerberry v. Wells Fargo Home Mtge.,* 2015 WL 8031857, at *7 (E.D. Mich. Dec. 7, 2015) (granting summary judgment where "plaintiff made a threadbare claim for 'emotional damages' without any detail as to the symptoms or severity of the emotional distress or how Defendant allegedly caused these damages."). Thus, this Court finds that Lucas sufficiently stated emotional distress damages arising from a RESPA violation. Lucas has stated both attorney's fees damages and emotional distress damages under RESPA. Fifth Third's Motion for Summary Judgment on the issue of standing is **DENIED**.

### C. RESPA Violations

"RESPA is a consumer protection statute, which Congress passed in order to reform the real estate settlement process. The statute was intended to ensure that consumers received information about settlement costs, and to protect them from high settlement fees and the potentially abusive practices of providers." *Augesnstein v. Coldwell Banker Real Est. LLC*, 2011 WL 3837096, at *2

(S.D. Ohio Aug. 30, 2011). In 1990, Congress expanded the scope of RESPA to include loan servicing. *Washington v. Green Tree Servicing LLC*, 2017 WL 1857258, at *3 (S.D. Ohio May 5, 2017). The implementing rules under RESPA known collectively as "Regulation X" require mortgage servicers to:

- exercise reasonable diligence in obtaining documents and information to complete a borrower's loss mitigation application.3 12 C.F.R. § 1024.41(b)(1).
- not move for an order of sale if a borrower submits a complete loss mitigation application more than 37 days before a foreclosure sale. 12 C.F.R. § 1024.41(g).
- provide timely notice of loss mitigation options it will offer the borrower. 12 C.F.R. § 1024.41(c)(1)(ii).
- provide a reasonable period of time to fulfill its requirements for acceptance of a trial loan modification plan. 12 C.F.R. § 1024.41 (e)(2)(h).

*Id.* at *3–4. If a loan servicer is deemed liable for a violation of RESPA, the plaintiff "may recover actual damages, and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of RESPA and Regulation X, in an amount not to exceed $2,000." *Schoen v. Bank of Am., N.A.*, 2019 WL 590882, at *3 (S.D. Ohio Feb. 13, 2019).

**1.  12 C.F.R. § 1024.41(b)(1)**

Under § 1024.41(b)(1), a loan servicer "shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Lucas's Complaint alleges that Fifth Third violated RESPA and Regulation X by failing to exercise reasonable diligence in obtaining documents and information to complete the loss mitigation application. (ECF No. 33 at 9). Fifth Third argues that Lucas's RESPA claims concerning loss mitigation applications are inapplicable to the facts here given her loss mitigation application had been approved, and she alleges issues with the permanent loan modification offer. (ECF No. 46 at 24). As a threshold issue, Lucas fails to address her § 1024.41(b)(1) claim in the summary judgment briefing. Thus, this Court holds that Lucas has conceded such claims. *Clark v. City of Dublin*, 178 F. App'x 522,

524–25 (6th Cir. 2006) (holding that a plaintiff abandons its claims by failing to respond to arguments made in a defendant's motion for summary judgment). Even if Lucas had addressed her § 1024.41(b)(1) claim, her claim still would have failed given "Regulation X requiring reasonable diligence is concerned with loss mitigation applications, not a borrower's response to an offer for a permanent loan modification." *Schoen*, 2019 WL 590882, at \*7. Thus, Fifth Third is entitled to summary judgment on Lucas's § 1024.41(b)(1) claim.

### 2. 12 C.F.R. §§ 1024.41(c)(1)-(3);1024.41(d)

Subsection (c) regulates the evaluation of loss mitigation applications and Subsection (d) regulates denials of permanent modification options. In Lucas's Complaint, she alleges violations of §§ 1024.41(c)(ii)(A); (c)(1)(ii); (c)(2)(iv); (c)(3)(i); and 1024.41(d), yet she addresses none of these claims in her summary judgment briefing. (ECF No. 33 at 9–10). Notably, (c)(ii)(A) does not exist. As discussed above, any claims not addressed in Lucas's summary judgment briefing are conceded. *See* Section III.C.1, *supra*. As a result, Fifth Third is entitled to summary judgment on Lucas's §§ 1024.41(c)(ii)(A); (c)(1)(ii); (c)(2)(iv); (c)(3)(i); and 1024.41(d) claims. This Court will now address Lucas's only remaining RESPA claims under §§ 1024.41(e) and (g).

### 3. 12 C.F.R. § 1024.41(e)

Subsection (e) provides in relevant part:

(1) *In General*. Subject to paragraphs (e)(2)(ii) and (iii) of this section, if a complete loss mitigation application is received 90 days or more before a foreclosure sale, **a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower.** If a complete loss mitigation application is received less than 90 days before a foreclosure sale, but more than 37 days before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 7 days after the servicer provides the offer of a loss mitigation option to the borrower.

14

(2) *Rejection*—(i) *In general.* Except as set forth in paragraphs (e)(2)(ii) and (iii) of this section, **a servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline established pursuant to paragraph (e)(1) of this section to have rejected the offer of a loss mitigation option**.

(ii) *Trial Loan Modification Plan.* A borrower who does not satisfy the servicer's requirements for accepting a trial loan modification plan, but submits the payments that would be owed pursuant to any such plan within the deadline established pursuant to paragraph (e)(1) of this section, shall be provided a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section.

§ 1024.41(e)(1)-(2) (emphasis added).

First, Lucas contends that Fifth Third violated RESPA by failing to provide a reasonable amount of time to fulfill all requirements to effectuate her loan modification. (ECF Nos. 47 at 13; 33 at 9). Lucas alleges that Fifth Third did not give her fourteen days to accept or reject a loss mitigation option as required under subsection (e)(1), specifically, the loan modification offer made to her after she completed the TPP. (ECF No. 47 at 14). The loan modification document directions page stated the relevant documents were to be executed and returned by February 7, 2024, and the agreement further provided the first loan payment was due March 1, 2024. (ECF No. 33-1 at 1, 3). In Lucas's view, Fifth Third offered her a new loan modification offer on March 1, 2024, when it re-sent her loan modification paperwork after the original executed documents were not received by Fifth Third. (ECF No. 47 at 14). Accordingly, Lucas contends Fifth Third was obligated to give her a reasonable amount of time to accept and return the second set of documents. (*Id.*). Second, Lucas contends Fifth Third wrongfully closed her loss mitigation file merely three days after she received the second set of loan modification documents and should have modified the original February 7, 2024, due date for the paperwork. (*Id.*).

15

Fifth Third counters that in re-sending the loan modification documents, Fifth Third merely extended the existing deadline to accept the offer, it did not constitute a new offer. (ECF No. 48 at 11). Fifth Third also contends that even if the re-sent documents constituted a new offer Fifth Third did not violate RESPA because: (1) the rules only require a servicer to follow such rules for a single complete loss mitigation application on a borrower's mortgage account; and (2) Lucas did not make her March 1, 2024, mortgage payment, which was required in order to accept the modification agreement. (*Id.* at 16–17).

Case law supports that a loan servicer may be liable under this section by: "(1) failing to set a valid deadline—of at least 14 days after the offer—by which a borrower must accept the offer of a loss mitigation option; or (2) failing to honor a deadline the servicer initially set." *Schoen*, 2019 WL 590882, at *9. Here, it is undisputed that Fifth Third set an offer acceptance deadline greater than 14 days beyond the offer, that Lucas did not return her documents before the original February 7, 2024, deadline, and that Lucas did not make a loan payment by March 1, 2021. At issue, however, is whether Fifth Third extended a new offer to Lucas and if so, whether Fifth Third needed to give Lucas more time to comply.

First, this Court is not persuaded by Lucas's arguments that Fifth Third extended a new offer, as Fifth Third merely gave Lucas more time to comply. Fifth Third re-sent identical copies of the original loan modification documents without any new terms or requirements. Further, Fifth Third representative, Amber Mattingly, testified in her deposition that Fifth Third verbally informed Lucas she had thirty additional days to accept her loan modification offer. (ECF No. 44-1 at 86–89); *see Neal v. Money Source, Inc.*, 2025 WL 848460, at *5 (N.D. Ala. Mar. 18, 2025) (finding a loan servicer representative's oral extension of a deadline to accept a loan modification did not constitute a new offer).

16

Lucas contends that *Washington v. Green Tree Servicing LLC*, sustains her arguments but that case is distinguishable. *See* 2017 WL 1857258, at *9 (S.D. Ohio May 5, 2017), *report and recommendation adopted,* 2017 WL 2599252 (S.D. Ohio June 15, 2017) (finding loan servicer violated RESPA where it denied a loan modification agreement before the deadline it originally set). In *Washington*, after the plaintiff made a request for an extension of time to comply with one of the modification requirements, the loan servicer denied the offer outright the very the next day despite the original deadline for acceptance not having passed. *Id.* Put simply, the loan servicer denied a loan modification agreement merely thirteen days after the initial offer. *Id.* The *Washington* Court found the loan servicer to be in violation of subsections (e)(1) and (2). *Id.* Despite Lucas's contentions, *Washington* is factually inapposite given it is not a case in which a *new* offer was extended, and the servicer denied the offer without a reasonable time for the plaintiff to accept, nor is it a case where an extension of time was granted beyond the original deadline.

Lucas also fails to cite any cases in which an extension of a loan modification deadline has constituted a new offer under RESPA. This Court finds that Fifth Third not only complied with subsection (e)(1) but exceeded what the section requires by granting additional time to comply beyond the fourteen-day minimum. Thus, there was no new loan modification offer in this case and Lucas is not entitled to summary judgment as to § 1024.41(e)(1). Fifth Third's Motion for Summary Judgment as to §1024.41(e)(1) is **GRANTED**.

Next, this Court must address whether Fifth Third violated § 1024.41(e)(2) by failing to honor the deadline set. It is not lost on this Court that Fifth Third simultaneously argues that it granted Lucas an extension of the original deadline, while also maintaining Lucas rejected the loan modification agreement by not returning her documents before the original deadline. (ECF No. 48

17

at 10–18). And notably, despite Mattingly's testimony stating Fifth Third granted a thirty-day extension, Fifth Third did not memorialize this extension in writing. If the spirit of RESPA and Regulation X is to protect borrowers in the loan modification process, this Court must wrestle with a fact pattern in which a loan servicer can feign granting an arbitrary extension of time, only to deny that extension days later.

*Ruckman v. PHH Mtge. Corp.*, 2022 WL 16575453, at *13 (N.D. Ohio Nov. 1, 2022) is instructive here. After falling behind on mortgage payments, Ruckman submitted a complete loss mitigation application and subsequently completed the trial loan modification program requiring her to submit three trial payments. *Id.* at 4. Following completion of the trial program, on November 6, 2020, Ruckman was instructed to execute and return the required loan modification documents by November 24, 2020. *Id.* Later, after an agreement between the parties, the deadline to return the documents was extended to December 31, 2020, and Ruckman was to pay the first loan payment on December 1, 2020. Ruckman contended that she executed and returned the loan modification documents in December, before the December 31, 2020, deadline yet PHH contended it did not receive them. *Id.* at 4–5. After the parties communicated about the lack of receipt in early January, PHH directed Ruckman to send the documents as soon as possible. *Id.* at 6. Accordingly, Ruckman re-sent the documents on January 12, 2020. *Id.* Despite such, on January 14, 2020, PHH issued a loan modification denial citing that Ruckman failed to return the modification agreement within the required timeframe. *Id.* It was undisputed that Ruckman made her first required payment under the modification agreement on time. *Id.* at 13.

The *Ruckman* court reasoned that even if Ruckman did miss the December 31, 2020, payment deadline, PHH could not dispute that Ruckman made her first payment on time as required by the loan modification agreement. *Id.* Moreover, given that the parties were engaged in

extensive communications to remedy the issue, and Ruckman got the documents to PHH by January 19, 2021, the court reasoned a jury could conclude that Ruckman did indeed accept the offer as permitted under the regulation. *Id.* It is also of note that the *Ruckman* court did not analyze the post December 30, 2020, deadline communications between the parties regarding execution of the loan modification agreement to constitute a new offer but analyzed whether a jury could determine that Ruckman accepted the initial offer after ultimately submitting the documentation as directed in January. *Id.*

This Court finds these facts to be nearly identical to *Ruckman* apart from one distinction. Unlike Ruckman, Lucas failed to make her first modified loan payment due on March 1, 2024. (ECF No. 47 at 7). Notably, however, Lucas contends that on March 1, 2021, she called Fifth Third who informed her that it could not accept payment, as her loan modification was being processed and assured her that she could wait until March 15, 2021. (*Id.*). After receiving the new forms on March 6, 2021, Lucas returned the completed application, which arrived on March 11, 2021. In the meantime, however, Fifth Third had closed Lucas's loss mitigation file on March 9, 2021. (*Id.*). This Court is not persuaded by Fifth Third's arguments that Lucas's claims must be forfeited given she did not make the March 1, 2021, payment. (ECF No. 48 at 17–18). The evidence supports that Fifth Third relayed conflicting information that caused Lucas not to submit payment on March 1, despite attempts to do so. (ECF No. 47 at 7). As in *Ruckman*, this Court finds that a reasonable jury could view Lucas's failed attempt to send the agreement that got lost in the mail and her subsequent execution of the agreement documents to constitute acceptance. *Ruckman*, 2022 WL 16575453, at *13 (declining to grant summary judgment on a §1024.41(e)(2) claim where a party failed to return the loan modification agreement before the deadline, and there were extensive communications demonstrating the parties were trying to resolve the issues after the fact).

19

Thus, given Fifth Third granted Lucas an extension and Lucas executed the modification agreement within four days of receiving the documents, this Court finds that there are genuine issues of material fact about whether Fifth Third violated § 1024.41(e)(2). The parties' Motions for Summary Judgment as to a violation of  subsection (e)(2) are **DENIED**.

### 4.  12 C.F.R. § 1024.41(g)

Under subsection (g) a loan servicer is prohibited from foreclosing on a property if the borrower has submitted a complete loss mitigation application thirty-seven days or more before the foreclosure sale. *Austerberry*, 2015 WL 8031857, at *5 (citing 12 C.F.R. § 1024.41(g)). A loan servicer can refute a subsection (g) violation if: (1) the servicer provided notice that the borrower was ineligible for loss mitigation and the appeal process was not applicable, the borrower failed to request an appeal, or the appeal was denied; (2) the borrower rejected all loss mitigation options offered by the servicer; or (3) the borrower failed to perform under an agreement on a loss mitigation option. *See* § 1024.41(g)(1)-(3).

Lucas contends that Fifth Third violated subsection (g) and no exception applies. (ECF No. 47 at 11–12). First, Lucas argues that she accepted Fifth Third's offer, but Fifth Third never received it. (*Id.* at 12). Further, relying on the assertion that Fifth Third tendered Lucas a second loan modification offer, Lucas contends that Fifth Third failed to set a new deadline for accepting the new offer, and despite such, Lucas complied with all terms of acceptance and submitted the new required documentation within 14 days. (*Id.*). In Lucas's view she did everything possible to comply with the requirements, and accordingly, Fifth Third was barred from proceeding with the foreclosure action against her. (*Id.* at 12–13).

Fifth Third maintains that it never extended a new offer to Lucas. In Fifth third's view, Lucas's failure to respond by the initial deadline places her conduct undisputedly within the

carve outs of 1024.41(g)(2) and (3). (ECF No. 46 at 31–32). Fifth Third further declares as detrimental to Lucas's claims the fact that Fifth Third and Lucas ultimately entered a loan modification agreement and no foreclosure ever occurred. (ECF No. 48 at 8–9).

First, Fifth Third's arguments that Lucas's RESPA claims are precluded given the house was never foreclosed are misguided. The Sixth Circuit has declared that a borrower has a right to bring RESPA claims even in instances where a foreclosure did not ultimately proceed and a borrower merely had to defend in the foreclosure action. *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 424 (6th Cir. 2022) ("Caliber caused Hurst to accrue fees in defending against the state foreclosure, and judicial relief can redress this injury, so Hurst has standing to bring her three claims."). Further, the plain language of subsection (g) provides that a loan servicer "shall not move for foreclosure judgment or order of sale." § 1024.41(g). Thus, the provision does not require a final sale but even protects against the initiation of the foreclosure process when a borrower has met certain requirements. As a result, Fifth Third's arguments that the house was not actually sold are futile.

Next this Court addresses whether the conduct at issue here falls into one of the subsection (g) exceptions. Specifically, exception (g)(2) applies if the borrower has rejected all loss mitigation options offered by the servicer, and exception (g)(3) applies if the borrower failed to perform under an agreement on a loss mitigation option. *See* §§ 1024.41(g)(2)-(3).

As discussed above, this Court does not find that Fifth Third's extension of the initial deadline constituted a new offer. *See* Section III.C.3, *supra*. Despite such, this Court finds there are genuine issues of material fact regarding whether Lucas accepted the initial offer. Lucas attests that on February 6, 2024, she went to the UPS store to notarize the documents required to accept the loan modification and then placed the required documents in the UPS mailbox. (ECF

21

No. 47-1, Exhibit, 1 at 3). Lucas further contends that upon learning from Fifth Third that they did not receive the documents, Fifth Third mailed a second set of the original loan modification agreement documents. (*Id.*). Fifth Third employee, Amber Mattingly, confirms that "[Lucas] explained to us that she put the documents in a mailbox and the mailbox was later vandalized. So we looked at that as an exception and provided her an additional 30 days [from the original deadline] to return the documents." (ECF No. 44-1 at 87–88). Mattingly further confirmed that the documents sent did not contain the new thirty-day deadline, but the new deadline was verbally communicated to Lucas. (*Id.*).

Again, this Court reasons that even in viewing these facts as an extension of the deadline and not a new loan offer, Fifth Third cannot escape liability. If Lucas did not receive the documents until March 6, 2024, it was unreasonable for her to meet a thirty-day extension of the original February 7, 2024, deadline. Additionally, Fifth Third does not dispute the veracity of Lucas's testimony that she mailed the documents and the mailbox was vandalized. (*Id.*). Rather, by its own admission, Fifth Third viewed this as an exception. Where nothing in the record leads this Court to believe that Lucas's testimony is "demonstrably false, contradicted by prior evidence, or totally implausible," this Court will not discount such testimony. *See Ruckman*, 2022 WL 16575453, at *11(citations omitted).

Thus, this Court finds that there is a genuine issue of material fact regarding whether Lucas accepted the initial offer. Accordingly, this Court cannot determine whether Lucas rejected the loss mitigation option (by failing to reply) falling under the subsection (g)(2) exception, or if Lucas failed to perform under the agreement on a loss mitigation option falling under exception (g)(3). *See id.* at *12 (declining to grant summary judgment under subsection (g) and stating, "PHH's explanation regarding all three of the exceptions found at § 41(g)

subsections (1) through (3) each expressly depend upon the factual assertion that Ruckman did not return a signed modification agreement and thereby rejected same."). The parties' Motions for Summary Judgment as to a violation of subsection (g) are **DENIED**.

### D. Breach of Contract

The parties do not dispute that Ohio law governs the alleged breach of contract claim. To state a breach of contract claim under Ohio law, a plaintiff must demonstrate: (1) a valid contract existed; (2) there was performance under the contract by the plaintiff; (3) the contract was breached by the defendant; (4) and that plaintiff suffered damages as a result of the breach. *Jarupan v. Hanna*, 2007-Ohio-5081, ¶ 18 (10th Dist.); *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

Lucas contends the parties were in a valid contract as of March 11, 2020, when Lucas returned the required loan modification agreement documents. (ECF No. 47 at 18). Lucas also argues Fifth Third breached that contract when it moved to sell her home on March 14, 2020, and again when Fifth Third provided inaccurate information about her account which caused her to believe she did not owe anything in March 2024. (*Id.*). Fifth Third alternatively contends that there was no breach of contract given the loan modification agreement was not accepted and countersigned by Fifth Third until April 25, 2024. (ECF No. 46 at 15). In Fifth Third's view, the statute of frauds, which requires mortgage modifications to be in writing, prevents the loan modification agreement from being enforceable before April 25. (*Id.*).

On September 25, 2023, Fifth Third provided Lucas the TPP offer letter which explained the loan modification process and provided in relevant part:

> Once you have successfully made each of the payments above by the due dates, your modified terms will take effect only after:
> — You have signed and submitted your loan modification agreement (which we will send to you after the completion of the Trial Period Plan);
> — We have signed the loan modification agreement and returned a copy to you upon completion of the Trial Period Plan; **AND**
> — The modification effective date set forth in the loan modification agreement has occurred.

(ECF No. 46-17, Exhibit Q, at 3). The September 23, 2023, letter specifically provides the steps necessary to make the loan modification agreement effective. In terms of actually accepting the loan modification offer, however, the loan modification agreement provided in relevant part:

> **What you need to do**
> **To accept this loan modification, you will need to do the following:** Sign the two (2) copies of the loan modification agreement provided here, have them notarized and have them delivered to Fifth Third Bank, National Association at the address below by 02/07/2024. Failure to do so will result in the automatic withdrawal by Fifth Third Bank, National Association, without further notice, of the offer to modify your loan.

(ECF No. 46-18, Exhibit R, at 3). Accordingly, in order to accept the offer, Lucas merely needed to return the signed and notarized documents to Fifth Third by February 7, 2024. (*Id.*).

As discussed thoroughly above, this Court finds that Fifth Third did not extend a new offer to Lucas but extended the February 7, 2024, deadline to accept by thirty days according to Mattingly's testimony. *See* Sections III.C.3, 4, *supra*. Therefore, Lucas accepted the offer when she returned the signed and notarized documents to Fifth Third. This Court determined that there is a genuine issue of material fact about when Lucas ultimately accepted this offer. *See* Section III.C.3, *supra*. Nonetheless, Lucas's breach of contract claims still fail because regardless of when the offer was accepted, the loan modification agreement was not yet effective when the alleged breaches occurred.

At the latest, Lucas accepted the loan modification offer, and a valid contract existed on March 11, 2024. Even so, and per the terms of the TPP offer, the modification agreement did not become effective until both parties signed the loan modification agreement. (ECF No. 46-17, Exhibit Q, at 3). Even more damaging to Lucas's claim, is that under Ohio law, "no party to a

loan agreement may bring an action on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought or by the authorized representative of the party against whom the action is brought." Ohio Rev. Code § 1335.02(B). The Ohio Revised Code provides an exception to the requirement that the agreement must be signed by the financial institution if: (1) the loan agreement is intended by the parties to be signed by the debtor but not by the financial institution; (2) the agreement is signed by the debtor; and (3) the delivery of the loan agreement has been accepted by the financial institution. *Id.* This exception does not apply given the TPP offer letter states the agreement would not become effective without Fifth Third's signature, and the loan modification agreement undisputedly provides space for Fifth Third's signature. (ECF Nos. 46-17, Exhibit Q, at 3; 46-18, Exhibit R, at 8).

Thus, the loan modification agreement did not become effective until April 25, 2024, when Fifth Third signed the agreement. Lucas alleges that Fifth Third breached the contract on March 14, in moving to sell her home, and at various points in March when it gave her conflicting information about what she owed. (ECF No. 47 at 18). Given that the loan modification agreement did not become effective until its signing on April 25, 2024, Fifth Third could not have breached the agreement in March. As a result, this Court **GRANTS** Lucas's Motion for Summary Judgment as to the breach of contract claim.

### IV.    CONCLUSION

Accordingly, Fifth Third's Motion for Summary Judgment (ECF No. 46) is **GRANTED in part and DENIED in part**. Specifically, the Motion is:

- **GRANTED** with respect to Lucas's breach of contract claim;

- **GRANTED** with respect to Lucas's §§ 1024.41(b)(1);1024.41(c)(1)-(3);1024.41(d); and 1024.41(e)(1) claims

- **GRANTED** with respect to Lucas's FDCPA claim

- **DENIED** with respect to Lucas's §§ 1024.41(e)(2) and 1024.41(g) claims.

Lucas's Motion for Summary Judgment (ECF No. 47) is **DENIED**. Specifically, the Motion is:

- **DENIED** with respect to Lucas's breach of contract claim;

- **DENIED** with respect to Lucas's §1024.41(e)(1) claim;

- **DENIED** with respect to Lucas's §§ 1024.41(e)(2) and 1024.41(g) as genuine

  issues of material fact remain for such claims.

Lucas's §§ 1024.41(e)(2) and 1024.41(g) claims remain for trial.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 30, 2026**